UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>DANIEL VEGA,<br><br>          Defendant. | Case No. 1:21-cr-00210-DCN<br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

Before the Court is the issue of whether Defendant Daniel Vega's prior conviction for Idaho domestic battery with traumatic injury constitutes a "crime of violence" under United States Sentencing Guideline § 4B1.2(a)(1) for purposes of sentencing in this case. If Vega's prior conviction is a crime of violence, his base offense level is 20. If his prior conviction is not a crime of violence, his base offense level is 14.

## II. BACKGROUND

On August 10, 2021, Vega was indicted for Unlawful Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), and Possession of a Firearm with an Obliterated Serial Number in violation of 18 U.S.C. § 922(k).[1] Dkt. 1. On December 1, 2021, Vega entered pleas of guilty to both counts without a plea agreement. Dkts. 25–27.

---

[1] The Indictment also contained a Criminal Forfeiture Allegation for any firearm and ammunitions involved in the commission of the offense. Dkt. 1, at 2.

United States Probation subsequently prepared a Presentence Investigation Report ("PSR"). In the Initial PSR, Probation calculated Vega's base offense level as 14, after finding Vega's prior conviction for Idaho domestic battery with traumatic injury ("felony domestic battery") did not qualify as a "crime of violence" under § 4B1.2(a)(1). Dkt. 29, ¶ 18.[2] The Government objected to the Initial PSR, arguing felony domestic battery in Idaho constitutes a "crime of violence" under the Guideline because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The issue is critical because § 2K2.1(a)(4)(A) of the Guidelines sets a base offense level of 20 for anyone who is convicted of possessing a firearm "subsequent to sustaining one felony conviction of … a crime of violence." As such, the Government argued Vega's base offense level should be 20 pursuant § 2K2.1(a)(4)(A). Dkt. 30, at 6.

Vega responded to the Government's objection, maintaining the Initial PSR correctly determined his prior conviction for felony domestic battery is not a crime of violence under § 4B1.2(a)(1), and that his base offense level is 14. *See generally*, Dkt. 33. Probation ultimately agreed with the Government and amended the Initial PSR to change Vega's base offense level from 14 to 20 in the Final PSR. Dkt. 34-1.

In his Sentencing Memorandum, Vega objected to the Final PSR's calculation of his base offense level as 20. Dkt. 36. The Government responded to Vega's objection in its Sentencing Memorandum, arguing Probation correctly determined Vega's prior conviction

---

[2] While the text of paragraph 18 of the Initial PSR states the base offense level is 20, the base offense level was instead listed as 14. The Government's subsequent correspondence with Probation clarified that Probation did not initially believe Vega had a qualifying crime of violence, and that the initial base offense level was 14. Dkt. 30, at 1 n. 1.

constituted a crime of violence, and that his base offense level is 20. Dkt. 37. During Vega's scheduled sentencing on February 16, 2022, the Court heard persuasive argument from both sides on the issue, and, after advising the parties that it would issue the instant written decision on whether Vega's prior conviction constitutes a crime of violence under § 4B1.2(a)(1) of the Guidelines, ultimately continued Vega's Sentencing to March 16, 2022.[3]

### III. LEGAL STANDARD

The operative definition of "crime of violence" is set forth in § 4B1.2(a)(1), which is known as the "elements" or "force" clause of the Guideline.[4] In order to determine whether Vega's prior conviction qualifies as a crime of violence as defined in § 4B1.2(a)(1), the Court applies the "categorical approach" outlined in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990). "Under this categorical approach, if the state statute of conviction criminalizes more conduct than the federal generic offense, then the state offense is not categorically included in the definition of the federal generic offense." *Rodriquez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) (citation omitted). "If the state statute of conviction criminalizes the same conduct or less conduct than the federal generic offense, then it qualifies as a generic federal offense." *United States v. Perez*, 932 F.3d 782, 784–85 (9th Cir. 2019) (citing *Barragan-Lopez v. Holder*, 705 F.3d 1112, 1115 (9th Cir. 2013)).

---

[3] The Court informally advised the parties of its decision with respect to Vega's base offense level, and intent to file the instant decision, prior to Vega's sentencing on March 16, 2022.

[4] The parties agree that § 4B1.2(a)(2), which is deemed the "enumerated offense clause," is not at issue because Vega's prior conviction is not one of the four enumerated offenses in § 4B1.2(a)(2). Dkt. 30, at 2; Dkt. 33, at 2.

The United States Supreme Court has emphasized the "key" to the categorical comparison is only the "statutory definitions—i.e., the elements—of a defendant's prior offense[]" and *not* "the particular facts underlying" the prior conviction. *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor*, 495 U.S. at 600). Under the categorical approach, the Court must presume Vega's prior conviction "rested upon [nothing] more than the least of th[e] acts criminalized" under his Idaho statute of conviction. *United States v. Baldon*, 956 F.3d 1115, 1125 (9th Cir. 2020) (brackets in original) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–191 (2013)).

However, when a prior conviction is for violating a "divisible statute"—that is, if the statute "lists alternative sets of elements, in essence several different crimes"—the Court may employ the "modified categorical approach." *United States v. Werle*, 815 F.3d 614, 619 (9th Cir. 2016) (citation omitted). Under this approach, the Court may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction," and then apply the categorical approach to the subdivision under which the defendant was convicted. *Id*. (quoting *Descamps*, 570 U.S. at 257).

## IV. ANALYSIS

The Government argues Vega's prior conviction categorically qualifies as a crime of violence under the Guidelines. If the Court finds otherwise, the Government contends the Idaho statute is nevertheless divisible, and the Court should then apply the modified categorical approach to find the subsection under which Vega was convicted qualifies as a crime of violence. Vega disputes both contentions, and the Court addresses each in turn.

MEMORANDUM DECISION - 4

### A. Categorical Approach

In applying the categorical approach, the Court first construes the generic federal definition of "crime of violence" under the elements clause of § 4B1.2(a)(1). This section defines "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id*. In interpreting this language, the Supreme Court has defined "physical force" to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original) (citation omitted).[5] Clarifying this definition, the Supreme Court later explained that "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*." *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019).

In addition, the Supreme Court has held the use of force must be intentional, requiring "active employment" and a "higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). "The bedrock principal of *Leocal* is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006). The Supreme Court has also recently held that the elements clause does not include offenses which criminalize reckless conduct.

---

[5] While *Johnson* arose in the context of the Armed Career Criminal Act and interpreted the definition of a "crime of violence" under 18 U.S.C. § 924(e)(2)(B)(i), that definition uses the same language as the "crime of violence" definition under U.S.S.G. § 4B1.2(a)(1).

*Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (plurality).[6] Accordingly, for Vega's state criminal conviction to constitute a "crime of violence" as defined in § 4B1.2(a)(1), "it must have as an element the *intentional* 'use, attempted use, or threatened use' of *violent* physical force against another person." *Perez*, 932 F.3d at 786 (emphasis added).

The Court turns next to Vega's state crime of conviction: Idaho felony domestic battery. This crime is defined as follows: "Any household member who in committing a battery, as defined in section 18-903, Idaho Code, inflicts a traumatic injury upon any other household member is guilty of a felony." Idaho Code § 18-918(2)(a). Battery, in turn, is defined in Idaho Code § 18-903 as any:

    a.  Willful and unlawful use of force or violence upon the person of another; or

    b.  Actual, intentional and unlawful touching or striking of another person against the will of the other; or

    c.  Unlawfully and intentionally causing bodily harm to an individual.

Idaho Code § 18-903.

Traumatic injury "means a condition of the body, such as wound or external injury, whether of a minor or serious nature, caused by physical force." Idaho Code § 18-918(1)(b). Finally, Idaho felony domestic battery is punishable by a term of imprisonment of up to ten years. Idaho Code § 18-918(2)(b).

While the Government argues Idaho felony domestic battery is categorically a "crime of violence" under § 4B1.2(a)(1), Vega contends this crime requires neither the

---

[6] Like *Johnson*, 559 U.S. 133, *Borden* also arose in the context of the Armed Career Criminal Act. *See*, *supra* text accompanying note 4.

MEMORANDUM DECISION - 6

mens rea, nor actus rea, necessary to qualify as a "crime of violence" under the Guideline. Because the Court agrees with Vega's former contention, it does not further address the latter.

### 1.  Mens rea

The Government argues Idaho Code § 18-903 requires a heightened mens rea for all three forms of battery. Specifically, § 18-903(a) "requires a showing that the accused purposely used force or violence upon the victim's body." *State v. Billings*, 54 P.3d 470, 473 (Idaho Ct. App. 2002). Section 18-903(b) "requires proof of intent to touch or strike another person." *Id.* Last, § 18-903(c) requires proof of "intent to cause bodily harm to a person." *Id.* As such, the Government maintains Idaho battery cannot be committed negligently or recklessly, and that the mens rea is the same for both a "crime of violence" under § 4B1.2(a)(1), and battery under Idaho Code § 18-903.

Vega counters that the Supreme Court's decision in *Borden* established an offense cannot qualify as a crime of violence unless a conviction necessarily requires that, when the defendant acted, he made a "deliberate choice [to use force] with full awareness of [the] consequent harm." *Borden*, 141 S. Ct. at 1824, *id.* at 1835 (Thomas, J., concurring in judgment) (agreeing with the plurality that the elements clause only captures conduct "designed to cause harm" to another). Vega highlights that the *Borden* Court held the elements clause does not reach the individual who intentionally engages in forceful conduct when he does so merely in conscious disregard of "a substantial and unjustifiable" risk that his conduct will result in harm to another. *Id.* at 1824–25 (cleaned up).

Instead, the elements clause requires proof that when a defendant acted, he "not only [engaged in] a substantial degree of force," but that his use of force evidenced "a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Id.* at 1830. By contrast, an individual who does not intend the harm resulting from his conduct, but rather "pay[s] insufficient attention to the potential application of force" has not engaged in conduct that is "opposed to or directed at another in the targeted way that clause requires." *Id.* at 1827.

The Supreme Court's analysis in *Borden* illustrates why Idaho's felony domestic battery statute fails to qualify as a crime of violence under § 4B1.2(a)(1). To see this, however, requires a brief examination of the legislative history of the statute. Specifically, from the date of its passage until 2005, Idaho's felony domestic battery statute read as follows: "Any household member who **commits** a battery, as defined in section 18-903, Idaho Code, and **willfully and unlawfully inflicts a traumatic injury** upon any other household member is guilty of a felony." Former Idaho Code § 18-918(3) (2003) (emphasis added).

In 2005, the Idaho legislature amended the statute to read as follows: "Any household member who ~~commits~~ in committing a battery, as defined in section 18-903, Idaho Code, ~~and willfully and unlawfully~~, inflicts a traumatic injury upon any other household member is guilty of a felony."[7] Idaho Code § 18-918(2)(A) (2005) (strikethroughs added to reflect amendment). Thus, the Idaho legislature struck the

---

[7] Vega was convicted of felony domestic battery in 2017, so the 2005 version of the statute is applicable. Dkt. 30-2.

requirement that a defendant must "willfully and unlawfully" inflict traumatic injury in order to be guilty of felony domestic battery. The purpose of the amendment was very clear: "to clarify that a battery against a household member does not require an additional intent, above and beyond that required for a battery against a non-household-member." 2005 Idaho Laws Ch. 158 (S.B. 1061); *see also State v. Lilly*, 122 P.3d 1170, 1171 n.1 (Idaho Ct. Appeals 2005) ("In 2005, the legislature . . . amended [Idaho Code § 18-918], deleting the words "willfully and unlawfully from the [2003 version of] the substantive subsection at issue in this appeal.").

Given this amendment, a person can be convicted of felony domestic battery in Idaho if he or she 1) has the mens rea required for simple misdemeanor domestic battery, and 2) happens to also inflict traumatic injury. Willful infliction of a traumatic injury is no longer required under Idaho Code § 18-918. This, in turn, causes the mens rea of the offense to be overbroad, because to be guilty of battery under Idaho Code § 18-903 does not require a showing that the accused purposely caused injury. *Billings*, 54 P.3d at 473. "Although it is not necessary that the defendant know that the act is illegal *or intend that it cause bodily injury*, it is necessary that the defendant intend a forceful or violent contact with the other person." *Id*. (emphasis added) (citing Idaho Code § 18-903(a)). Moreover, the culpable state of mind for a violation of Idaho Code § 18-903(b) is intent to touch or strike another person, and not intent to cause bodily injury or harm. *Billings*, 54 P.3d at 473.

The holding in *State v. Macias* illustrates why the mens rea required for battery is overbroad, 129 P.3d 1258, 1260 (Idaho Ct. App. 2005). At trial:

Part of Marcias's defense was that although he made physical contact with

the victim, believing it necessary in order to block a blow coming from the victim, he did not do so with the purpose of using force or violence on the victim or with the intent to strike or cause bodily harm to that individual. His testimony provided evidence to support this defense theory.

129 P.3d at 1260.

When Macias was convicted of aggravated battery, he appealed, arguing the district court erred in refusing to give an instruction stating, "[a]ll persons are capable of committing crimes, except those belonging to the following class: Persons who committed the act or made the omission charged through misfortune or by accident when it appears that there was not evil design, intention, or culpable negligence." *Id.* at 1259. The *Macias* court held it was not reversible error to omit the instruction because the trial court sufficiently instructed the jury on the mens rea required for battery by: (1) defining the elements for battery under Idaho Code § 18-903(a)–(c); (2) instructing the jury that "[a]n act is 'willful' or done 'willfully' when done on purpose. One can act willfully *without intending . . . to injure another*, or to acquire any advantage"; and (3) "In every crime or public offense there must exist a union or joint operation of act and intent." *Id.* at 1260 (emphasis added). The *Macias* court explained:

> Taken together, these instructions told the jury that in order to find Macias guilty of aggravated battery, the jury must find that he willfully used force or violence on the victim, *or* intentionally struck him, *or* intentionally caused the victim to suffer bodily harm. These instructions sufficiently notified the jury that Macias could not be found guilty for acts committed through misfortune or accident.

*Id.* (emphasis added)

After *Borden*, an intent to use physical force, or an intent to cause physical contact, is simply not enough to satisfy the elements clause. As the *Borden* Court explained, the

point of this clause is "to mark out a narrow 'category of violent, active crimes." 141 S. Ct. at 1830 (quoting *Johnson*, 559 U.S. at 140). To do this, the elements clause encompasses only crimes that involve "a deliberate choice of wreaking harm on another." *Id*. This deliberate choice must be made "with full awareness of [the] consequent harm." *Id*. at 1823. As *Macias* illustrates, battery in Idaho can instead be accomplished by willfully using force, or by intentionally striking the victim—an intent to cause harm *is not* required. *Macias*, 129 P.3d at 1260–61; *see also White v. Univ. of Idaho*, 797 P.2d 108, 109 (Idaho 1990) (affirming lower court ruling that "under Idaho law the intent required for the commission of a battery is simply the intent to cause an unpermitted contact and not an intent that the contact be harmful or offensive.").

Under the categorical approach, when "determining the meaning or scope of the crime of conviction, the federal courts are bound by the state courts' interpretations of state criminal statutes." *United States v. Flores-Cordero*, 723 F.3d 1085, 1087 (9th Cir. 2013) (citing *Johnson*, 559 U.S. at 140). As Idaho case law illustrates, Idaho Code § 18-903 punishes crime not encompassed under § 4B1.2(a)(1) and is thus categorically overbroad.

### B. Modified Categorical Approach

The Government argues that even if one of the subsections of Idaho Code § 18-903 is overbroad, the Court should apply the modified categorical approach because the Idaho statute is divisible and the subsection under which Vega was convicted qualifies as a "crime of violence" under § 4B1.2(a)(1).

In *Descamps*, the Supreme Court recognized a "narrow range of cases" in which courts may apply the "modified categorical approach." 570 U.S. at 261 (quoting *Taylor*,

495 U.S. at 602). Under this approach, a court may look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). However, courts may use the modified categorical approach only when a statute is divisible—i.e., if it "lists multiple, alternative elements, and so effectively creates 'several different crimes." *Descamps*, 570 U.S. at 264 (cleaned up). If the state statue is overbroad and indivisible, a court may not apply the modified categorical approach, and must hold that the defendant has met his burden for establishing that he was not convicted for a crime of violence. *Rendon v. Holder*, 764 F.3d 1077, 1083 (9th Cir. 2014).

The Government argues Vega's prior statute of conviction is divisible because the three crimes that constitute Idaho battery have differing mens rea requirements. Dkt. 37, at 5. As Vega points out, this contention is inaccurate for two reasons. First, the three subsections of Idaho Code § 18-903 do not require different mental states. Instead, as *Macias* highlighted, to be convicted of battery in Idaho, the jury has to find that the defendant had an intent to commit the actus reus of the offense—whether it be unlawful touching, use of force, or causing bodily injury. 129 P.3d at 1260. Intent is the mens rea required to commit battery in Idaho, regardless of the section under which a defendant is convicted.[8] *Id.*; *see also Billings*, 54 P.3d at 473 (explaining the culpable state of mind for

---

[8] In *Mathis*, the Supreme Court gave an example of a Texas assault statute that encompassed the mental states—"intentionally, knowingly, or recklessly"—as "interchangeable means of satisfying a single mens rea element." 136 S. Ct. at 2253 n. 3.

a violation of § 18-903(a)–(c) is intent to perform the "interdicted acts" under the various provisions) (cleaned up).

Second, even if Idaho Code § 18-903(a)–(c) did require differing mental states, that does not mean each subsection is a separate offense. The Government suggests "[d]iffering mens rea requirements are a hallmark of divisibility." Dkt. 37, at 5 (citing *United States v. Wehmhoefer*, 835 F. App'x 208, 211 (9th Cir. 2020) (unpublished)). As an unpublished case, *Wehmhoefer* is not precedential. More importantly, however, the case the *Wehmhoefer* Court cited for this principal—*Rendon*, 764 F.3d at 1086—explained it is "black-letter law that a statute is divisible only if it contains multiple alternative *elements*, as opposed to alternative *means*." *Rendon*, 764 F.3d at 1086 (emphasis in original). "If a statute does not list alternative elements, but merely encompasses different means of committing an offense, the statute is 'indivisible' and the modified categorial approach 'has no role to play.'" *Lopez-Valencia v. Lynch*, 798 F.3d 863, 868 (9th Cir. 2015) (quoting *Descamps*, 570 U.S. at 264).

In *Rendon*, the Ninth Circuit explained divisibility hinges on whether the state court jury must unanimously agree on the particular offense of which the defendant was convicted. 764 F.3d at 1085. By contrast, a statute is indivisible if "the jury may disagree" on the fact at issue "yet still convict." *Id.* at 1086; *United States v. Robinson*, 869 F.3d 933, 938 (9th Cir. 2017) (explaining if "a jury must unanimously agree on which of the . . . statutory alternatives a defendant committed to return a conviction," the alternatives are elements; otherwise, they are means). Significantly, an Idaho jury can convict a defendant for violation of Idaho Code § 18-903 *without* unanimously agreeing on whether the

MEMORANDUM DECISION - 13

defendant violated 18-903(a), (b), or (c). *Billings*, 54 P.3d at 473 ("[T]he jury was instructed on all three alternative *means* of committing battery") (emphasis added); *Macias*, 129 P.3d at 1260 (noting the trial court properly instructed the jury on the three ways of establishing battery).

Idaho's pattern jury instructions likewise show that Idaho battery is indivisible. In Idaho, the jury instructions for a statute that defines multiple separate crimes identify those separate crimes through the use of "parentheses or brackets." Idaho Supreme Court, Criminal Jury Instructions, Introduction & General Directions for Use, *available at https://isc.idaho.gov/main/criminal-jury-instructions*. For example, the Idaho jury instruction for sexual battery of a child, in violation of Idaho Code § 18-1508A, reads as follows:

ICJI 928 SEXUAL BATTERY OF A CHILD

INSTRUCTION NO.

In order for the defendant to be guilty of Sexual Battery of a Child, the state must prove each of the following:

1. On or about [date]

2. in the state of Idaho

3. [the defendant [name] [committed [an act of] [genital-genital contact] [or] [oral-genital contact] [or] [anal-genital contact] [or] [oral-anal contact] [or] [manual-anal contact] [or] [manual-genital contact] [or] [any other] [a] [lewd or lascivious act] upon or with the body of [name of victim],]

[or]

[the defendant [name] involved [name of victim] in [sexual intercourse] [or] [erotic fondling] [or] [erotic nudity] [or] [masturbation] [or] [sadomasochism] [or] [sexual excitement],

[or]

[the defendant [name] solicited [name of victim] to participate in a sexual act,]

[or]

[the defendant [name] caused or had sexual contact with [name of victim],]

4. the defendant engaged in such conduct with the specific intent of arousing, appealing to, or gratifying the lust, passion, or sexual desires of the defendant, of such child, or of some other person,

5. [name of victim] was [16] [or] [17] years of age, and

6. the defendant was at least 5 years of age older than [name of victim].

If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

*Id.*

The Idaho jury instruction for battery contains no such brackets, and instead reads:

ICJI 1203 BATTERY DEFINED

INSTRUCTION NO.

A "battery" is committed when a person:

(1) willfully and unlawfully uses force or violence upon the person of another; or

(2) actually, intentionally and unlawfully touches or strikes another person against the will of the other; or

(3) unlawfully and intentionally causes bodily harm to an individual.

*Id*.

Finally, the general law of unanimity in Idaho further supports the conclusion that

MEMORANDUM DECISION - 15

Idaho battery is indivisible. "Idaho law requires a trial court to instruct a jury that, in order to convict a defendant, it must unanimously agree on the defendant's guilt." *State v. Southwick*, 345 P.3d 232, 240 (Idaho Ct. App. 2014). "An instruction that the jury must unanimously agree on the facts giving rise to the offense, however, is generally not required." *State v. Severson*, 215 P.3d 414, 431 (Idaho 2009) (citations omitted). The only time an unanimity instruction—beyond the basic instruction that all must agree on the defendant's guilt—must be given is "when the defendant commits several acts, each of which would independently support a conviction for the crime charged." *Id*. That is, when there is evidence of "separate incident[s]"— [] "distinct union[s] of mens rea and actus reus separated by a discrete period of time and circumstance from any other such similar incident"—then a defendant will be "entitled to have the jury instructed that it must agree on a single incident in order to find him guilty." *Id.* at 431–32. Otherwise, "in cases involving alternative means of meeting statutory elements, the jury need only agree upon the bottom line." *Southwick*, 345 P.3d at 240. As *Billings* and *Macias* illustrate, jurors in Idaho could disagree on whether a defendant committed battery by using force, striking, or causing bodily injury, but still return a unanimous guilty verdict.

In sum, because Idaho battery is an offense that sets forth alternative means of establishing the offense for which the jury need not agree, the statute is not divisible and the modified categorical approach is inapplicable.

///

///

///

MEMORANDUM DECISION - 16

## V. CONCLUSION

For the foregoing reasons, the Court finds Vega's underlying state conviction is not a crime of violence under § 4B1.2(a)(1). Accordingly, Vega's base offense level is 14.[9]

DATED: March 18, 2022

David C. Nye
Chief U.S. District Court Judge

---

[9] The Court does not make this decision lightly. The facts of Vega's underlying conviction are extremely egregious and unsettling. As the Court has elsewhere commented, the categorical approach causes judges to "swap[] factual inquiries for an endless gauntlet of abstract legal questions." *United States v. Daniel*, 2021 WL 3037404, at *8 (D. Idaho 2021) (quoting *United States v. Doctor*, 842 F.3d 306, 313–15 (4th Cir. 2016) (Wilkinson, J., concurring)). Yet, the Court is bound to follow the categorical approach by "faithful adherence to precedent." *United States v. Escalante*, 933 F.3d 395, 406 (5th Cir. 2019).